**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**DAVID IMPELLIZZERI,**

                         **Plaintiff,**

        v.                                   5:17-CV-230 (FJS/ATB)

**STATE OF NEW YORK,** *d/b/a State University of New York*; **UPSTATE MEDICAL UNIVERSITY HOSPITAL,** *a/k/a Upstate University Hospital at Community General Hospital*; **CINDY CAMPAGNI; DENISE BARBER; LORI FEENEY; SHARON KLAIBER; MAXINE THOMPSON;** and **LISA BRACKETT,**

                         **Defendants.**

---

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
Oct 18 - 2021
John M. Domurad, Clerk

| APPEARANCES | OF COUNSEL |
|---|---|
| **COTE & VAN DYKE, LLP**<br>214 North State Street<br>Syracuse, New York 13203<br>*Attorneys for Plaintiff* | **JOSEPH S. COTE, III, ESQ.** |
| **KUPFERSTEIN MANUEL, LLP**<br>865 South Figueroa Street<br>Suite 3338<br>Los Angeles, California 90017<br>*Attorneys for Plaintiff* | **ROXANNA A. MANUEL, ESQ.** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**<br>300 South State Street<br>Suite 300<br>Syracuse, New York 13202<br>*Attorneys for State Defendants* | **AIMEE COWAN, AAG** |
| **GALE GALE & HUNT, LLC**<br>7136 East Genesee Street<br>Fayetteville, New York 13066<br>*Attorneys for Defendant Campagni* | **MINLA KIM, ESQ.**<br>**KEVIN T. HUNT, ESQ.** |

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action alleging the following five causes of action: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) retaliation for exercising rights under a union contract; (3) a violation of his due process rights pursuant to 42 U.S.C. § 1983; (4) defamation; and (5) intentional infliction of emotional distress ("IIED"). *See* Dkt. No. 1, Compl., at ¶¶ 122-160. He brings all of these causes of action against his former employer, Defendant Upstate Medical University Hospital ("Defendant Upstate"), as well as various supervisors and employees, namely, Defendants Denise Barber, Lori Feeney, Sharon Klaiber, Maxine Thompson, and Lisa Brackett (hereinafter collectively referred to as "the individual Defendants"), and Defendant State of New York (hereinafter collectively referred to with Defendant Upstate and the individual Defendants as the "State Defendants"). *See id.* at ¶¶ 1-9. Plaintiff also named Cindy Campagni as a defendant and included her in his causes of action for defamation and IIED. *See id.* at ¶¶ 152-160. Pending before the Court are Defendants' motions for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 152, 155.

## II. BACKGROUND

Plaintiff's claims arise from a situation that occurred in the summer of 2015 when he, a male registered nurse, was assigned to train Defendant Campagni at Defendant Upstate. *See* Dkt. No. 1 at ¶¶ 17-19. After approximately seven weeks of training with him, on June 29, 2015, Defendant Campagni complained in an email to the individual Defendants that Plaintiff

had sexually harassed her by talking to her about his sexual activity, questioning her sexual orientation, and miming certain sexual acts around her.  *See id.*, Campagni Email Ex., at 31.  Defendant Campagni also alleged that Plaintiff had told her he was "fired from Crucible [Steel], kicked out of Crouse Hospital School of Nursing and fired from a second job due to a sexual harassment charge."  *See id.*  In addition, Defendant Campagni claimed that Plaintiff made inappropriate comments about certain colleagues' emotional states and abilities to perform their work.  *See id.*  Defendant Campagni also complained to the individual Defendants about Plaintiff's treatment of patients, noting that he was loud and abrupt with an 81-year-old patient, and he twice commented on post-operative bariatric patients' appearances, including looking up one of the patient's weight and diagnosis in the computer system, even though he was not assigned to that patient.  *See id.*

After receiving the complaint, Defendant Barber placed Plaintiff on paid administrative leave, but both she and Defendant Feeney informed Plaintiff that they could not tell him the nature of the complaints that had been made against him.  *See* Dkt. No. 1 at ¶¶ 43-45.  The next day, Defendant Feeney called Plaintiff and advised him that he was banned from entering the hospital during the course of their investigation.  *See id.* at ¶ 47.  Later, on July 20, 2015, Defendant Barber informed Plaintiff that he was demoted from his grade 18 position, wherein he worked on probationary status as a float nurse, to a grade 16 position.  *See id.* at ¶ 57.  Plaintiff contends that Defendant Campagni complained about several female coworkers as well, but none of those coworkers were punished or even investigated.  *See id.* at ¶¶ 29, 37-38, 130.  Plaintiff alleges that, as early as August 2015, the individual Defendants knew or should have known that there were reasons to doubt Defendant Campagni's credibility, and this was

particularly true after she resigned in September 2015 after three other training nurses reported instances of her erratic and dangerous work behavior. *See id.* at ¶¶ 84, 88.

Nonetheless, on August 12, 2015, Plaintiff was "interrogated" at a police station at Defendant Upstate's downtown campus; and he claims that State Defendants attempted to intimidate and coerce him into resigning. *See id.* at ¶¶ 67-71. At the interrogation, Plaintiff admitted that he might have accessed the post-operative bariatric patient's medical records and that he falsified his employment application when he stated that he had never been fired from a position and when he omitted Crouse School of Nursing from his education. *See* Dkt. No. 152-14, Interrogation T., at 5-7. Plaintiff ultimately received a Notice of Discipline ("NOD"), dated September 22, 2015, which contained twenty charges. *See* Dkt. No. 1, NOD Ex., at 28-30. At that time, Plaintiff was suspended without pay because there was probable cause that his presence at Defendant Upstate represented "a danger to persons or property" and because Plaintiff was "charged with the commission of a crime." *See id.* at 30. Plaintiff asserts that he was not charged with committing a crime and that each of the allegations in the NOD were "false, libelous and malicious" and constituted "defamation per se." *See* Dkt. No. 1 at ¶¶ 42, 92. Plaintiff argues that, on December 3, 2015, Defendant Klaiber sent the NOD report to the New York State Office of Professional Discipline ("NYSOPD"), which he also claims was defamatory and pretextual. *See id.* at ¶ 96.

Shortly thereafter, and pursuant to his union contract, Plaintiff demanded an arbitration hearing, which occurred on December 21, 2015, and January 5, 2016. *See id.* at ¶¶ 93-94. Plaintiff claims that Defendants Klaiber and Thompson falsely testified at the arbitration hearing that an unnamed, unidentifiable female coworker had made a prior complaint of sexual harassment against Plaintiff. *See id.* at ¶ 94. The arbitrator ultimately dismissed all but six of

the twenty charges, finding only that Plaintiff was guilty of making inappropriate comments to the post-operative bariatric patients and improperly accessing their medical records. *See* Dkt. No. 152-25, Arbitration Decision, at 23; Dkt. No. 1, NOD Ex., at 29. As a result of these findings, the arbitrator fined Plaintiff one month's pay and ordered Defendant Upstate to restore Plaintiff to the payroll and retroactively compensate Plaintiff with full pay and benefits from the award date to September 22, 2015, when he was suspended without pay. *See* Dkt. No. 152-25 at 27.

Plaintiff further alleges that, on April 15, 2016, Defendant Brackett left him a voicemail to discuss his return to work, and she ordered him to work night shifts. *See* Dkt. No. 1 at ¶¶ 139-140. According to Plaintiff, he received a letter from Defendant Brackett on April 20, 2016, advising him that he had failed to appear for scheduled work on April 18, 2016, and indicating that he might be subject to disciplinary action, including termination of employment, as a result. *See id.* at ¶¶ 110, 142. Plaintiff ultimately resigned on May 4, 2016, and he commenced this action on February 28, 2017. *See id.* at ¶ 116.

### III. DISCUSSION

#### A. Title VII discrimination claim

"A plaintiff who wishes to pursue a federal employment discrimination suit under Title VII must file a charge with the EEOC within 300 days of the alleged unlawful employment practice or challenged discriminatory act." *Brooking v. New York State Dep't of Tax'n & Fin.*, No. 1:15-CV-0510 (GTS/CFH), 2016 U.S. Dist. LEXIS 86457, *20 (N.D.N.Y. July 5, 2016) (citing 42 U.S.C. § 2000e-5(e)(1); *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004)). "When . . . a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." *Petrosino v.*

*Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004). "For hostile work environment claims, only one alleged act must fall within the statute of limitations, and so long as that act is part of the same unlawful practice as the earlier acts, the entire period of hostile environment may be considered." *Yu v. City of New York*, 792 F. App'x 117, 118 (2d Cir. 2020) (summary order) (citation omitted). This is referred to as the "continuing violation doctrine." "With respect to claims based on 'termination, failure to promote, denial of transfer, or refusal to hire,' . . . section '2000e-5(e)(1) "precludes recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period," even if other acts of discrimination occurred within the statutory time period . . . .'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 105)).

In Plaintiff's Title VII cause of action, he alleges that State Defendants "treated [him] disparately, differently, [and] discriminatorily in the terms and conditions of his employment due to his gender[.]" *See* Dkt. No. 1 at ¶ 123. Plaintiff contends that, after Defendant Campagni leveled false charges against him and other female coworkers, the individual Defendants rejected the accusations against the coworkers on the ground that Defendant Campagni was not credible but took the uncorroborated accusations against Plaintiff as true without any meaningful investigation. *See id.* at ¶¶ 124-125. According to Plaintiff, this resulted in State Defendants treating Plaintiff disparately from the other similarly-situated employees, and the only "motivating reason" for that disparate treatment was Plaintiff's male gender. *See id.* at ¶¶ 126-127. As further evidence of this, Plaintiff points to the fact that the female nurses were not even investigated, whereas he was placed on administrative leave. *See*

*id.* at ¶ 130.  Nowhere in his Title VII claim does Plaintiff explicitly allege that he suffered from a hostile work environment.  *See id.* at ¶¶ 122-132.

Furthermore, Plaintiff's general factual allegations in his complaint appear to claim that he suffered from discrete acts of discrimination.  As set forth above, Plaintiff asserts that, in June and July 2015, Defendant Barber placed him on administrative leave without first making a reasonable inquiry as to the legitimacy of Defendant Campagni's complaints; Defendants Barber and Feeney refused to tell Plaintiff why he was being placed on leave; he was banned from entering the hospital; and he was demoted from job class 18 to class 16, losing his position as a float nurse and "reassigned to less rewarding tasks."  *See id.* at ¶¶ 43-47, 57.  Plaintiff complains that, in August 2015, he was interrogated, intimidated, and coerced into resigning.  *See id.* at ¶¶ 67-70.  He also alleges that he received the NOD in September 2015, which contained "false, libelous and malicious statements" about him; and Defendant Klaiber forwarded those statements to NYSOPD in December 2015.  *See id.* at ¶¶ 40-42.  Additionally, Plaintiff claims that Defendant Klaiber and Defendant Thompson falsely testified about an unnamed coworker who had made a prior complaint against Plaintiff at the arbitration hearing, which occurred on December 21, 2015 and January 5, 2016.  *See id.* at ¶ 94; Dkt. No. 152-3, Tesorio Decl., at ¶ 55 (citing Dkt. No. 152-25, Arbitration Dec., at 1).  Plaintiff also alleges that he was discriminated against after the arbitrator ordered his reinstatement because Defendant Brackett "wrote a knowingly false letter alleging [Plaintiff] had failed to appear for scheduled work on [April 18, 2016,] without authorization and threatened him" that he might be subject to disciplinary action, including termination of his employment.  *See id.* at ¶¶ 108, 110.  According to Plaintiff, State Defendants "made it clear that they intended to create a hostile work environment and discharge [him] at the earliest possible date[.]"  *See id.* at ¶ 112.

Plaintiff filed his complaint with the EEOC on November 7, 2016. *See* Dkt. No. 154-21, EEOC Compl., at 5. In that complaint, he alleged that State Defendants refused to pay the arbitrator's award of back pay and that such discrimination was "ongoing." *See id.* at 3. Plaintiff asserted that "[f]alse accusations were made against [him] and other female staff," he was the only male, "and the only person charged by the all[-]female administration[,]" whereas "[t]he female staff were not investigated or charged." *See id.* Plaintiff claimed that he was "completely exonerated" after challenging the accusations, and "[t]he female administration knew or should have known the allegations against [him] were false but pursued them anyway." *See id.* Plaintiff also indicated that the arbitrator awarded him back pay but alleged that State Defendants had "refused" to pay him "to date." *See id.* Plaintiff also attached a letter to his EEOC complaint, in which he sought to "report an ongoing case of gender discrimination with regard to [him] (a male) by the female administration at [Defendant Upstate]." *See id.* at 1. In addition to the foregoing, Plaintiff asserted that, because he "prevail[ed]" at arbitration, he was supposed to be reinstated; however, he was "tentatively 'reinstated' to a lower job class, at a lower pay rate, to a shift [he] did not normally work, due to [his] gender." *See id.*

The parties do not dispute that the 300-day rule would ordinarily limit Plaintiff's claims to any events that occurred after January 12, 2016. *See* Dkt. No. 152-2, State Defs' Memorandum in Support, at 11; Dkt. No. 168-4, Pl's Memorandum in Opposition to State Defs' Mot., at 26. The parties also agree that nearly every alleged discriminatory act listed in the complaint occurred between June 29, 2015 – when he was placed on administrative leave – until the second arbitration date on January 5, 2016, *i.e.*, more than 300 days before he filed his EEOC complaint on November 7, 2016. Thus, these claims are untimely, and the only way the Court may consider them is if Plaintiff alleged in the complaint that conduct occurring after January

12, 2016, combined with prior conduct, created a hostile work environment. Notably, the only alleged acts that occurred after that date were Defendant Brackett's interactions with Plaintiff, in which she allegedly left a voicemail informing Plaintiff that he must return to work at Defendant Upstate on April 18, 2016, on an unfamiliar floor on the night shift, and that she wrote a letter to Plaintiff on April 20, 2016, warning him that his unexcused absence on April 18, 2016, might result in discipline or termination.

Although Plaintiff contends in his memorandum of law that each of these allegations shows a pattern of discriminatory behavior against him, he does not allege such "pattern of behavior" in his complaint. The only reference he makes to that effect is when he predicts that State Defendants "made it clear that they intended to create a hostile work environment and discharge [him] at the earliest possible date" following his return to employment at Defendant Upstate in April 2016. *See* Dkt. No. 1 at ¶ 112. The Court finds that this allegation amounts to nothing more than speculation. Furthermore, in his EEOC complaint, Plaintiff merely asserted that State Defendants' refusal to provide him back pay, as the arbitrator ordered, was "ongoing." *See* Dkt. No. 154-21 at 3. The Court further finds that Plaintiff's allegation that State Defendants refused to pay the awarded back pay on an "ongoing" basis fails to assert that all of the allegations were "ongoing" as to create a hostile work environment, and the remainder of his claims concern discrete instances of discrimination. Accordingly, the Court concludes that Plaintiff has not alleged a hostile work environment in his complaint; and, thus, the continuing violation doctrine does not apply. As such, Plaintiff's claims of certain discrete instances of discrimination, taking place entirely in 2015, are untimely.

Thus, the only remaining instances of discrimination about which Plaintiff complains that occurred after January 12, 2016, and therefore would be timely under the 300-day rule, stem

from Defendant Brackett's communications with him regarding his return to work. For these allegations, the Court must apply the *McDonnell Douglas* test to determine whether Plaintiff has met his *prima facie* burden. "Under the [*McDonnell Douglas*] test, a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) [ ]he is a member of a protected class; (2) [ ]he is qualified for h[is] position; (3) [ ]he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802)).

After a plaintiff has established a *prima facie* case, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). At that point, "[t]he burden . . . shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Id.* (citing [*McDonnell Douglas*, 411 U.S.] at 804; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) ("If such a reason is proffered, the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action.")).

State Defendants do not dispute that Plaintiff is a male; and, thus, he is a member of a protected class. *See* Dkt. No. 152-2 at 12. Similarly, they admit that he was qualified for his position at Defendant Upstate as a registered nurse. *See id.* The next inquiry is whether Plaintiff suffered an adverse employment action with respect to the remaining alleged discriminatory acts. Courts have held that a plaintiff suffers an adverse employment action if he

- 10 -

endures a materially adverse change in the terms and conditions of his employment, such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," "a disproportionally heavy workload," or "other indices unique to a particular situation." *Vega*, 801 F.3d at 85 (quoting [*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)]; *Feingold [v. New York]*, 366 F.3d [138,] 152-53 [(2d Cir. 2004)]). Further, an adverse employment action must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Vega*, 801 F.3d at 85 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d. Cir. 2003) (internal quotation marks omitted)).

The only adverse actions that Plaintiff alleges after January 12, 2016, were a change in shift time and location. However, a change in shift times or locations to ones that are less desirable, without affecting the terms and conditions of employment, is considered a mere inconvenience; and, therefore, it does not rise to the level of an adverse employment action. *See, e.g.*, *Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 12 (2d Cir. 2019) (summary order); *Benedetto v. N.Y. State Office of Children & Family Servs.*, No. 6:19-CV-994 (LEK/ATB), 2020 U.S. Dist. LEXIS 127081, *7 (N.D.N.Y. July 20, 2020) (Kahn, J.); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. Oct. 10, 2005). Thus, the changes to Plaintiff's schedule, alone, are "mere inconveniences" that do not rise to the level of an adverse employment action.[1]

---

[1] Even if the Court were to consider the actions prior to January 12, 2016, the only material change appears to be Plaintiff's alleged "demotion" from grade 18 to grade 16. However, Plaintiff and his expert both admit that, as a grade 18 employee on probationary status, he could be "failed" for any reason and returned to grade 16. *See* Dkt. No. 154-24, Pl's Depo, at 138-139, 186. Dkt. No. 154-46, Colucci Depo II, at 104. Accordingly, this would not be an adverse employment action and would not cause the changes in Plaintiff's shift time or location to become such an action either.

Although Plaintiff also generally alleges, as discussed above, that State Defendants intended to discipline and terminate him if he returned to work at Defendant Upstate, such claim is entirely speculative because Plaintiff resigned on May 4, 2016, without having returned to work.  Further, a threat of *possible* discipline for an unexcused absence at work does not constitute a material change in the terms and conditions of employment to constitute an adverse employment action.  *See Chang v. Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (summary order) (noting that "oral and written warnings do not amount to materially adverse conduct"); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 212 (E.D.N.Y. 2014) (stating that "[t]he threat that Plaintiff would receive disciplinary charges . . . , which discipline never materialized, cannot be considered to be a materially adverse employment action" (citations omitted)).  As such, the Court finds that neither of the alleged actions that occurred after January 12, 2016, rose to such a level as to cause an adverse employment action.  Accordingly, the Court grants State Defendants' motion with respect to this claim and dismisses Plaintiff's first cause of action for gender discrimination under Title VII.

### B. Retaliation claim

Although it is unclear in Plaintiff's complaint whether he brought his retaliation claim pursuant to Title VII or 42 U.S.C. § 1983, Plaintiff clarifies in his memorandum of law that his claim falls under Title VII.  *See* Dkt. No. 1 at ¶¶ 133-145; Dkt. No. 168-4 at 30.  Thus, the 300-day timeliness requirements and the *McDonnell Douglas* test apply, just as they did regarding Plaintiff's Title VII gender discrimination claim.  With respect to retaliation, the *McDonald Douglas* test requires the plaintiff to establish "that '(1) []he engaged in a protected activity; (2) h[is] employer was aware of this activity; (3) the employer took adverse employment action against h[im]; and (4) a causal connection exists between the alleged adverse action and the

protected activity.'" *Trostle v. New York*, No. 1:13-CV-0709 (GTS/DJS), 2016 U.S. Dist. LEXIS 38370, *26-*27 (N.D.N.Y. Mar. 24, 2016) (Suddaby, C.J.) (quoting *Summa* [*v. Hofstra Univ.*], 708 F.3d [115,] 125 [(2d Cir. 2013)] (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 [2d Cir. 2006])).

With regard to his retaliation claim, Plaintiff asserts that he engaged in "protected activity" by appealing his suspension and NOD pursuant to his union contract. *See* Dkt. No. 1 at ¶ 134. Plaintiff further alleges that, when he "moved forward with a demand for arbitration pursuant to the union contract[,] . . . [D]efendant Klaiber knowingly made false, libelous, and malicious allegations against [him] to the [NYOPD] in retaliation for his having exercised his rights under his contract." *See id.* at ¶ 137. Additionally, Plaintiff alleges that, when the arbitrator ordered his return to work, he was "given a demotion from job class 18 to job class 16, with reduced income," and was ordered "to work night shifts (graveyard shifts)." *See id.* at ¶¶ 138-139. Plaintiff also asserts that, in response to Defendant Brackett's April 15, 2016 voicemail asking that he return her call to discuss his return to work date, Plaintiff contacted his legal counsel, "who returned the call but was unable to speak to [D]efendant Brackett." *See id.* at ¶¶ 140-141. Plaintiff alleges that, on April 20, 2016, "in retaliation for his having contacted counsel, and communicating with [State Defendants] through counsel, [P]laintiff was advised he was 'subject to disciplinary action,'" including possible termination. *See id.* at ¶ 142.

As discussed above, Defendant Klaiber's December 3, 2015 letter was sent prior to January 12, 2016; and, thus, any Title VII claim relating to that alleged misconduct is time-barred. The same is also true with respect to Plaintiff's alleged "demotion" from a grade 18 to grade 16 nurse, of which he was notified on July 20, 2015, based on Defendants Barber, Klaiber, and Brackett's recommendations. *See id.* at ¶¶ 118-120; Dkt. No. 152-3 at ¶¶ 22-30;

Dkt. No. 152-10, Ex. G., at 1.  Therefore, the Court finds that both Plaintiff's complaints about Defendant Klaiber and his alleged "demotion" are untimely.  Finally, for the reasons stated above, the Court finds that Defendant Brackett's April 20, 2016 letter to Plaintiff does not constitute an adverse employment action under the third prong of the *McDonnell Douglas* test because it is a threat of future discipline or termination for an unexcused absence, which was never acted upon, because Plaintiff resigned on May 4, 2016.  Without an adverse action, Plaintiff cannot succeed on his Title VII retaliation claim.  Therefore, as no further instances of retaliation remain, the Court grants State Defendants' motion to dismiss Plaintiff's second cause of action for retaliation.

### C. 42 U.S.C. § 1983 due process claim

The parties appear to agree that the Eleventh Amendment grants Defendants State of New York and Upstate immunity from lawsuits brought pursuant to 42 U.S.C. § 1983.  *See* Dkt. No. 152-2 at 26; Dkt. No. 168-4 at 31-33; *see also Walker v. N.Y.S. Justice Ctr. for the Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 246 (S.D.N.Y. 2020).  The parties also appear to agree that the individual Defendants are state officials who "'are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time."'"  *Simon v. City of N.Y.*, 893 F.3d 83, 92 (2d Cir. 2018) (quoting [*District of Columbia v.*] *Wesby*, 138 S. Ct. [ 577,] 589 [(2018)] (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012))).

Before the Court inquires into the individual Defendants' qualified immunity status, however, it must first determine whether Plaintiff has adequately alleged the individual Defendants' personal involvement in his alleged due process violations.  "'It is well settled in

this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *accord Acosta v. Thomas*, 837 F. App'x 32, 35 (2d Cir. 2020) (summary order). To do so, "a plaintiff must establish that each defendant's own conduct violated the constitution[.]" *Stone v. Annucci*, No. 20-CV-1326 (RA), 2021 U.S. Dist. LEXIS 186195, *26 (S.D.N.Y. Sept. 28, 2021) (citing [*Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020)]).

In his complaint, Plaintiff alleges that the individual Defendants "violated [his] due process rights in having failed to advise him of the nature of the false allegations leveled against him when he was placed on administrative leave and barred from [Defendant] Upstate on June 29, 2015." *See* Dkt. No. 1 at ¶ 147. Plaintiff also alleges that, during his interrogation, the individual Defendants "subjected [him] to needless emotional harm in conducting such interrogation in a police setting and subjecting [him] to humiliation and intimidation in an attempt to force his resignation from employment." *See id.* at ¶ 148. Plaintiff asserts that the individual Defendants "also falsely advised [him] that he was 'charged with the commission of a crime' for the purpose of humiliation and intimidation in an attempt to force his resignation from employment" and "wrongfully and intentionally retaliated against [him] for exercising his rights under the union contract." *See id.* at ¶¶ 149-150.

In these allegations, Plaintiff generally refers to the individual Defendants as Defendant State of New York's "administrative/supervisory staff," and he does not identify which individual Defendants allegedly violated his rights in such ways. *See id.* at ¶¶ 147-149. For example, he does not specify how Defendants Barber, Feeney, Klaiber, Thompson, or Brackett

subjected him to emotional harm or were involved with conducting his interrogation in a police setting. *See id.* at ¶ 148. Plaintiff also fails to identify which individual Defendant falsely advised him that he was "charged with the commission of a crime." *See id.* at ¶¶ 92, 149. Furthermore, as discussed above, Plaintiff's generalized claim that he was intentionally retaliated against for exercising his rights under the union contract is considered pursuant to Title VII, and it failed because the claim was time-barred and did not contain an adverse employment action. In any event, Plaintiff does not specify in his complaint which individual Defendant(s) wrongfully "retaliated" against him, how those individuals caused him humiliation, how they intimidated him, or how they otherwise violated his due process rights. Accordingly, the Court grants State Defendants' motion for summary judgment with respect to this claim because it is barred by the Eleventh Amendment and Plaintiff failed to identify how the individual Defendants were personally involved in the actions.

### D. Defamation claim

"Under New York law, a claim for defamation or slander must be commenced within one year of the publication date." *Thomas v. Heid*, No. 8:17-CV-1213 (MAD/DJS), 2017 U.S. Dist. LEXIS 201722, *13 (N.D.N.Y. Dec. 6, 2017) (Stewart, M.J.) (citing *McKenzie v. Dow Jones & Co.*, 335 F. App'x 533, 535 (2d Cir. 2009) [(summary order]); N.Y. C.P.L.R. 215(3)), *adopted by* 2018 U.S. Dist. LEXIS 62285 (N.D.N.Y. Apr. 12, 2018) (D'Agostino, J.). Plaintiff admits that he filed his federal complaint more than one year after State Defendants allegedly uttered defamatory statements from September 22, 2015, to January 5, 2016, and after Defendant Campagni sent her June 2015 email to the individual Defendants. *See* Dkt. No. 168-4 at 33; Dkt. No. 168-5, Pl's Memorandum in Opposition to Def. Campagni's Mot., at 3-5. Nonetheless, Plaintiff contends that he "timely commenced the defamation action against the same individual

Defendants in the State Supreme Court on November 28, 2016, which was well within the one-year statute of limitations period." *See id.* Plaintiff cites to no caselaw or statute, nor does it appear any exists, that provides that the statute of limitations for a defamation claim may be extended in a federal action so long as a plaintiff timely alleged it in a separate state action.

It is clear that all of the alleged defamatory statements throughout the complaint, including Defendant Campagni's June 29, 2015 email to Defendant Barber, the November 22, 2015 NOD that erroneously stated that Plaintiff had been charged with the commission of a crime, the December 3, 2016 letter to NYOPD, and Plaintiff's allegation that those defamatory statements were "republished" during the arbitration hearing on December 21, 2015 and January 5, 2016, are time-barred. This is because Plaintiff did not commence this federal action, in which he alleges defamation, until February 28, 2017, more than one-year after Defendants allegedly made any of the defamatory statements. Thus, the Court grants Defendants' motions with respect to Plaintiff's defamation claim and dismisses that cause of action.

### E. IIED claim

In his memoranda, Plaintiff does not appear to dispute that, "[i]n New York, a cause of action for intentional infliction of emotional distress accrues on the date of injury and carries a one year statute of limitations." *Quinn v. United States*, 946 F. Supp. 2d 267, 278 (N.D.N.Y. 2013) (Suddaby, J.) (citations omitted). Instead, he merely alleges that Defendants' actions caused him such "profound harm" as to satisfy the elements of his IIED claim. *See* Dkt. No. 168-4 at 38-39; Dkt. No. 168-5, at 11-12. The only allegation that Plaintiff includes in his complaint to support his IIED cause of action is that his "claims accrued on or about December 3, 2015, when the listed defendants forwarded a false claim to the [NYSOPD]." *See* Dkt. No. 1 at ¶ 160. Plaintiff additionally generalizes that "[e]ach named defendant herein intended to

cause [Plaintiff] emotional distress as punishment for his unwillingness to cooperate in their construction of a defense to the false accusations of [Defendant] Campagni against [Defendant Upstate]." *See id.* at ¶ 158. As discussed above, Defendant Campagni's accusations against Plaintiff occurred in June 2015, his placement on administrative leave and receipt of his NOD occurred in July and August 2015, and he attended the arbitration hearing in December 2015 and January 2016. Plaintiff did not commence this action until February 28, 2017. Accordingly, the Court finds that Plaintiff's claims for IIED accrued, at the latest, in January 2016; and he did not commence this action until more than one year later. As such, the Court grants Defendants' motions for summary judgment and dismisses Plaintiff's IIED claim as time-barred.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that State Defendants' motion for summary judgment, *see* Dkt. No. 152, is **GRANTED**; and the Court further

**ORDERS** that Defendant Campagni's motion for summary judgment, *see* Dkt. No. 155, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

Dated: October 18, 2021
    Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge